# In the United States Court of Federal Claims

No. 08-830C
(Filed: April 12, 2010)

```
* * * * * * * * * * * * * * * * * *  *
                                     *
MIKE'S CONTRACTING ,                 *
LLC,                                 *
                                     *
                                     *  Motion for Summary Judgment; Fifth
             Plaintiff,              *  Amendment Taking; Personal
                                     *  Property; No Property Interest in
         v.                          *  Airworthiness Certificate or
                                     *  Commercial use of Aircraft; No
THE UNITED STATES,                   *  Jurisdiction over Tort Claim
                                     *
             Defendant.              *
                                     *
* * * * * * * * * * * * * * * * * *  *
```

*Michael A. Moulis,* Ft. Lauderdale, FL, for plaintiff.

*Michael N. O'Connell,* U.S. Department of Justice, Washington, DC, with whom were *Tony West,* Assistant Attorney General, and *Jeanne E. Davidson,* Director, for defendant.

**O P I N I O N**

**FIRESTONE**, *Judge*.

This case arises from the suspension of an airworthiness certificate issued by the

Federal Aviation Administration ("FAA"),[1] which prior to its suspension allowed the

---

[1] An airworthiness certificate is a document certifying that a particular aircraft is safe for flight. Display of a current airworthiness certificate is required to fly a civil aircraft within the United States. 14 C.F.R. §§ 21.183, 91.203 (2009).

plaintiff's helicopter to be used for commercial purposes. Count One of the complaint filed by the plaintiff, Mike's Contracting LLC ("Mike's Contracting"), alleges a taking of the plaintiff's property without just compensation in violation of the Fifth Amendment of the U.S. Constitution resulting from the FAA's suspension of the certificate of airworthiness of its helicopter. Counts Two and Three of the complaint allege that the FAA tortiously "interfered with Plaintiff's right to contract and engage in a business relationship" and interfered with the plaintiff's collection of evidence during a proceeding at the National Transportation Safety Board ("NTSB"), causing the spoilation of evidence.

Currently before the court is the January 30, 2010 motion filed by the United States ("government") for summary judgment on Count One of the complaint and to dismiss Counts Two and Three for lack of subject matter jurisdiction. Because the plaintiff has failed to show that there is any genuine issue as to any material fact that could support a judgment in favor of the plaintiff if resolved in its favor, and because the government is entitled to judgment as a matter of law, the government's motion for summary judgment as to Count One is **GRANTED** under Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). The government's motion to dismiss Counts Two and Three of the plaintiff's complaint for lack of subject matter jurisdiction is also **GRANTED** in accordance with RCFC 12(b)(1).

I.  **STATEMENT OF FACTS**

The following facts are not in dispute unless otherwise noted.

     **A.**    **Facts Relevant to Count One**

This case concerns the FAA-issued and -suspended airworthiness certificate of the plaintiff's Alouette II Model SE 3130 helicopter, serial number 1133, FAA Registration number N31330 ("helicopter" or "aircraft").[2] The helicopter was manufactured by Sud Aviation in France in 1957 or 1958. The helicopter was imported to the United States on or around April 12, 2000. In October 2000, J.H. Jet, LLC, the predecessor in interest to Mike's Contracting, applied for an airworthiness certificate for the helicopter, representing

---

     [2]Under 14 C.F.R. § 91.203(a), "no person may operate a civil aircraft unless it has within it . . . [a]n appropriate and current airworthiness certificate." The airworthiness certificate at issue is a standard airworthiness certificate, the issuance of which is governed by 14 C.F.R. § 21.183. Standard airworthiness certificates are "airworthiness certificates issued for aircraft type certificated in the normal, utility, acrobatic, commuter, or transport category, and for manned free balloons, and for aircraft designated by the [FAA] Administrator as special classes of aircraft," 14 C.F.R. § 21.175(a) (2009), and are differentiated from special airworthiness certificates, which include "primary, restricted, limited, light-sport, and provisional airworthiness certificates, special flight permits, and experimental certificates," 14 C.F.R. § 21.175(b) (2009). The standards for issuance of a standard airworthiness certificate vary based on the origin on the aircraft. See 14 C.F.R. § 21.183. A standard airworthiness certificate is effective "as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 43 and 91 of this chapter and the aircraft are registered in the United States." 14 C.F.R. § 21.181(a)(1) (2009).

     The FAA's ability to suspend or revoke an airworthiness certificate is set forth in 49 U.S.C. § 44709, which states:

> (b) . . . The Administrator may issue an order amending, modifying, suspending, or revok-ing–
>     (1) any part of a certificate issued under this chapter if–
>         (A) the Administrator decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action . . . .

49 U.S.C. § 44709 (2006).

to the FAA that the helicopter was imported and stating, "Current Airworthiness Certificate Issued in Accordance with FAR 21.183(c)." Def's Mot. Summ. J. & Dismiss App. 10.

On January 10, 2001, the FAA issued a Standard Airworthiness Certificate for the helicopter to the plaintiff's predecessor. The plaintiff alleges that longstanding FAA policy supported the issuance of the airworthiness certificate under 14 C.F.R. § 21.183(d), which applied to used aircraft, rather than § 21.183(c), which applied to imported aircraft.[3] Mike's Contracting purchased the helicopter on August 8, 2006.

The plaintiff contends that in 2006 FAA changed its policy with regard to imported helicopters such as the plaintiff's. On April 10, 2007, the FAA asked Mike's Contracting to produce an official "Certificate of Airworthiness for Export" or a statement from the French government that before export the helicopter "was examined and found to comply with the applicable U.S. Type Certificate and found to be in a condition for safe operation."[4] Def's Mot. Summ. J. & Dismiss App. 16. If such documentation was not

---

[3] The plaintiff contends that the FAA applied 14 C.F.R. § 21.183(d) rather than § 21.183(c), to certification of the Alouette II in 2000-2001, that application of this section was supported by FAA Order 8130.2F, and that the government had otherwise made public its policy of application of the used aircraft regulations rather than imported aircraft regulations to aircraft such as the plaintiff's. Pl.'s Proposed Findings of Fact ¶ 5, 15. The government contends, as did the FAA at the time of the suspension of the airworthiness certificate, that the FAA in fact applied 14 C.F.R. § 21.183(c), rather than § 21.183(d), to the application for an airworthiness certificate, and that the certificate was "mistakenly issued" under § 21.183(c) despite its lack of proper documentation stating that it had been inspected by the French government. Def's Mot. Summ. J. & Dismiss App. 20.

[4] The October 27, 2000 Attestation from Groupement pour la Sécurité Aviation Civile, the French equivalent of the FAA, did not state that the aircraft had been examined and was airworthy. Rather it stated that its design was compliant with its type certificate, which sets general standards for particular models of aircraft. The applicable type certificate for the

produced within ten days "or at another reasonably later date acceptable to the FAA," the FAA would take action, possibly including suspension or revocation of the airworthiness certificate.  Id.  The FAA stated that the aircraft was not to be flown until this documentation was provided.  After numerous communications between the FAA and the plaintiff and an FAA investigation of the aircraft, the plaintiff had still failed to submit the requested documentation.  In addition, many of the helicopter's records were in a foreign language, rendering FAA unable to readily and accurately determine the condition of the aircraft.  Accordingly, on August 14, 2007, the FAA determined that the imported helicopter did not meet the airworthiness requirements of 14 C.F.R. § 21.183(c) and issued an Emergency Order of Suspension, suspending the helicopter's standard airworthiness certificate because the helicopter's failure to meet the FAA's requirements posed an "ongoing and unacceptable risk to aviation safety."[5]  Def's Mot. Summ. J. & Dismiss App. 23.

The plaintiff appealed the FAA's August 14, 2007 suspension of the helicopter's airworthiness certificate to the NTSB pursuant to 49 U.S.C. § 44709(d).  At the

---

Alouette II Model SE 3101 was No. 7H1.  Under 14 C.F.R. § 21.29, a requirement of the issuance of that type certificate was that the country in which the aircraft was manufactured certified that "the product has been examined, tested, and found to meet . . . the applicable airworthiness requirements. . . ."  14 C.F.R. § 21.29(a)(1) (2009).

[5]The plaintiff agrees that the restrictions set forth in 14 C.F.R. § 21.183(c) precludes issuance of an airworthiness certificate for the helicopter because the country of origin (France) did not issue an "export certificate of airworthiness" for the aircraft.  The plaintiff contends that the FAA was able to issue a certificate of airworthiness to its predecessor because an export certificate is not required under 14 C.F.R. § 21.183(d).

administrative hearing regarding suspension of the plaintiff's airworthiness certificate, the Administrative Law Judge ("ALJ") granted the FAA's motion for summary judgment, sustaining the decision to suspend the certificate.[6]  Blakely v. Mike's Contracting, LLC, 2007 WL 4116181 (N.T.S.B. Sept. 11, 2007).  The plaintiff filed an appeal of the ALJ's initial decision with the NTSB but did not submit a brief; the appeal was therefore dismissed following an unopposed motion from the FAA.  Sturgell v. Mike's Contracting, LLC, 2008 WL 337874 (N.T.S.B. Feb. 22, 2008).

It is not disputed that although the plaintiff's aircraft is not eligible for a standard airworthiness certificate, there are a number of other potential uses for the helicopter. These uses are governed by special airworthiness certificates issued under 14 C.F.R. §§ 21.184-21.193 for which the plaintiff's helicopter may qualify.  Such uses include research and development, showing compliance with regulations, crew training, exhibition, air racing, and market surveys.  21 C.F.R. § 21.191.[7]

### B.   Facts Relevant to Counts Two and Three

The plaintiff alleges that the FAA has gone to lengths to ensure that the plaintiff is unable to obtain the documentation necessary to have its airworthiness certificate

---

[6]As is apparently typical for cases of emergency suspension, Mike's Contracting did not submit a brief in response to the government's motion for summary judgment, but was represented at the hearing by counsel who presented argument and was allowed to submit exhibits in support of the its position.  Blakely v. Mike's Contracting, LLC, 2007 WL 4116181 (N.T.S.B. Sept. 11, 2007).

[7]The plaintiff claims that each of these uses would be economically or practically infeasible.

reinstated. The plaintiff alleges that the FAA wrote to the French government, instructing it not to issue "attestation letters" or to provide to the plaintiff the needed certificate of airworthiness. The plaintiff alleges that this constitutes tortious interference with a business relationship and spoilation of evidence.

## II.   DISCUSSION

### A.   Standards of Review

This case involves both a motion for summary judgment and a motion to dismiss. The standards for each are well-settled and are set forth below.

#### 1.   Summary Judgment

Pursuant to RCFC 56, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001) (citation omitted). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);

Lathan Co., Inc. v. United States, 20 Cl. Ct. 122, 125 (1990); Casitas Mun. Water Dist., 543 F.3d at 1283.

### 2. Motion to Dismiss

When ruling on a motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1), the court assumes "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009); Nw. La. Fish & Game Pres. Comm'n v. United States, 574 F.3d 1386 (Fed. Cir. 2009). Subject matter jurisdiction may not be waived or forfeited; when a court concludes that it lacks jurisdiction, the complaint must be dismissed. See John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008).

### B. The Government is Entitled to Summary Judgment on the Plaintiff's Fifth Amendment Takings Claim.

Mike's Contracting alleges in Count One of the complaint that its rights under the Fifth Amendment's Takings Clause were violated as a result of the FAA's policy change and resulting suspension of the airworthiness certificate of a helicopter owned by the plaintiff. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "Real property, tangible property, and intangible property, all may be the subject of takings claims." Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009) (quoting Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002)) (internal quotation

marks removed). A taking may result from physical invasion or from regulation that "goes too far." Acceptance Ins., 583 F.3d at 854 (quoting Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922)); see also Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014-15 (1992). This case concerns an alleged regulatory taking.

When evaluating whether a government action constitutes a taking without just compensation, courts employ a two-part test. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'"[8] Acceptance Ins., 583 F.3d 849 (citing Palmyra Pac. Seafoods, L.L.C. v. United States, 561 F.3d 1361, 1364 (Fed. Cir. 2009); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004); Conti, 291 F.3d at 1339). "[W]e do not reach this second step without first identifying a cognizable property interest." Acceptance Ins., 583 F.3d at 854 (citing Air Pegasus, 424 F.3d at 1213). "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court's task is at an end." Am. Pelagic Fishing, 379 F.3d

---

[8]Importantly, the standard for what constitutes a compensable property interest for purposes of the Takings Clause is different from the standard for identifying property for purposes of the Due Process Clause. Arctic King Fisheries v. United States, 59 Fed. Cl. 360, 372 n.27 (2004) ("Care in this regard must be exercised not to analogize what is 'property' for purposes of the Taking Clause and what might be viewed as a 'property interest' under the Due Process Clause, as the two concepts are dissimilar.") (citing Flemming v. Nestor, 363 U.S. 603, 610-11 (1960); Kizas v. Webster, 707 F.2d 524, 538-40 (D.C. Cir. 1983)).

at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003)); see also Air Pegasus, 424 F.3d at 1213 ("[W]e do not reach this second step without first identifying a cognizable property interest."). If the court does identify a valid property interest, the court then determines whether the governmental action at issue constituted a compensable taking of that property interest. Am. Pelagic Fishing, 379 F.3d at 1372.

Turning to the first step of this test, the court finds that for purposes of the Fifth Amendment, the plaintiff did not have a property interest in the airworthiness certificate it alleges was taken without just compensation as a result of FAA's alleged policy change regarding application of certain regulations to the plaintiff's aircraft, nor did it have a compensable property interest in the use of its helicopter for commercial purposes. This is because both the certificate and the use it authorizes are tied to government approval in a context of pervasive government control.

It is well settled that "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." Acceptance Ins., 583 F.3d at 857 (quoting Conti, 291 F.3d at 1340) (internal quotation marks removed). These principles may define the plaintiff's relation to the property at issue, including the plaintiff's right to possess, use, and dispose of it. Id. (citing United States v. General Motors Corp., 323 U.S. 373, 378 (1945); Conti, 291 F.3d at 1340). The context and type of property are important to this analysis, as the owner of personal

property has a lower expectation in the use of personal property for commercial dealings than might the owner of real property. Am. Pelagic Fishing, 379 F.3d at 1377 (citing Lucas, 505 U.S. at 1030). If background principles reveal that the plaintiff had no right to exclude the government from intruding upon its possession of the property at issue, that property interest was not a compensable one. See Mitchell Arms v. United States, 7 F.3d 212, 215. (Fed. Cir. 1993).

The court reads the plaintiff's complaint to assert that the FAA's suspension of the airworthiness certificate for its helicopter amounted to a taking of either that airworthiness certificate or the right to use its aircraft for commercial purposes. However, based on the precedents discussed below, the court finds that the plaintiff did not have a vested property interest in the airworthiness certificate for purposes of the Takings Clause, so no compensable taking could have resulted from the suspension of the airworthiness certificate, nor from the resulting loss of the plaintiff's ability to use the helicopter for commercial purposes.

In Mitchell Arms, 7 F.3d 212, a seminal case dealing with the taking of personal property, the Federal Circuit considered whether a plaintiff's contracts made in reliance upon its permits to import assault rifles into the United States constituted a compensable property interest. The Circuit looked first to Bowen v. Public Agencies Opposed to Social Security Entrapment, 477 U.S. 41, 55 (1986), in which the state of California alleged a taking resulting from Congress's decision to repeal a provision that had allowed the state to

withdraw from the Social Security System.  The Court in Bowen held that the statutory change did not constitute a compensable taking because California's contractual right to withdraw did not rise to the level of "property" within the meaning of the Fifth Amendment.  Bowen, 477 U.S. at 55.  Because that right was "part of a regulatory program over which Congress retained authority to amend in the exercise of its power to provide for the general welfare," it was not "vested."  Id.

Relying upon Bowen, the Federal Circuit held in Mitchell Arms that "enforceable rights sufficient to support a taking claim against the United States cannot arise in an area voluntarily entered into and one which, from the start, is subject to pervasive Government control."  Mitchell Arms, 7 F.3d at 216 (quoting Mitchell Arms, Inc. v. United States, 26 Cl. Ct. 1, 5 (1992)) (citing Bowen, 477 U.S. at 55).  The Circuit concluded that because the plaintiff "voluntarily entered the firearms import business, thereby knowingly placing itself in the governmentally controlled arena of firearms importation . . . just as California . . . knowingly placed itself in the governmentally controlled arena of the Social Security System," the plaintiff's expectation of selling its rifles, which was based on its possession of the appropriate permits, was not a compensable property interest.  Mitchell Arms, 7 F.3d at 216.  "[T]he interest affected by [the agency's] actions–the right to sell assault weapons in domestic commerce–is not a right inherent in plaintiff's ownership of those weapons.  That right comes into being only upon the issuance of an import permit."  Mitchell Arms, 7 F.3d at 217 (quoting Mitchell Arms, 26 Cl. Ct. at 6).  In reaching this holding, the Federal

Circuit also found relevant the fact that although the agency had revoked its prior authorization that would have allowed the plaintiff to sell assault rifles in the United States, "Mitchell retained complete control over the rifles. Mitchell could have done anything it wished with the rifles, except import them into the United States in their original configuration." Mitchell Arms, 7 F.3d at 217.

The plaintiff before this court finds itself in an analogous situation. As with the plaintiff in Mitchell Arms, Mike's Contracting was the holder of a permit that allowed it to use its property in a particular way. Yet, also similar to Mitchell Arms and Bowen, the airworthiness certificate at issue was part of a system of pervasive federal regulation that prevented Mike's Contracting from having a "vested" interest in the certificate or in its use of the helicopter for purposes allowed by the certificate.[9] As the cases discussed above, this is also a case in which the plaintiff has voluntarily entered into business in a field that is and has been heavily regulated for long before the plaintiff purchased its helicopter. The fact that there is pervasive government control over commercial aviation is beyond dispute.

---

[9] The plaintiff argues that this case is distinguishable from Mitchell Arms in that the assault rifles that plaintiff sought to import under the "sporting purposes exception" were never actually imported because they were refused entry to the country by the U.S. Customs Service, whereas the helicopter at issue in this case was previously used for commercial purposes under its airworthiness certificate. See Mitchell Arms, 7 F.3d at 214. The court is unpersuaded that these facts distinguish the present case from Mitchell Arms, as in both that case and the present case, the plaintiff purchased some property with the expectation of using it in a particular way, and, because of a change in government policy, was no longer able to realize that expectation. In both cases, while a business expectation was frustrated, the plaintiff retained physical possession of the property at issue. And, in neither case did the plaintiff have a vested interest in that particular use of its personal property.

The Federal Circuit examined the long history of federal regulation of aviation in finding that a heliport owner had no property interest in access to navigable airspace from its heliport.  See Air Pegasus, 424 F.3d at 1217-19.  In Air Pegasus, the Federal Circuit explained that "the government has long exercised dominant control over the navigable airspace in regulating the public right of transit," and thus no private right of access could inhere in airspace because navigable airspace is public property not subject to private ownership.  Id. at 1217-18 (citing 49 U.S.C. §§ 40103(a)(1), 40102(a)(2)).  Though the examination of federal control of navigable airspace in Air Pegasus is not precisely on point, the principle of long-term, pervasive government control is equally applicable in the context of commercial aviation.  See, e.g., Suburban O'Hare Com'n v. Dole, 787 F.2d 186, 188 (7th Cir. 1986) ("Historically, aviation has been a closely regulated industry."); In re September 11 Litig., 280 F. Supp. 2d 279, 297 (S.D.N.Y. 2003) ("Aviation is clearly an area with a significant history of federal control"); Big Stone Broad., Inc. v. Lindbloom, 161 F. Supp. 2d 1009, 1017 (D.S.D. 2001) ("'[T]he regulation of aviation is a 'national responsibility' and that '[f]ederal control is intensive and exclusive.'" (quoting Nw. Airlines v. Minnesota, 322 U.S. 292, 303 (1944) (Jackson, J., concurring))).

Indeed, the laws in place at the time of the plaintiff's acquisition of the helicopter are clear on the issue of the FAA's ability to suspend airworthiness certificates:

> (b) . . . The Administrator may issue an order amending, modifying, suspending, or revok-ing–
>     (1) any part of a certificate issued under this chapter if–
>         (A) the Administrator decides after conducting a reinspection,

14

>reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action . . . .

49 U.S.C. § 44709.[10]

In such a context, the plaintiff could never have had a vested interest in its airworthiness certificate or in commercial aviation; rather those interests were created by the federal regulations with which it must comply in order to hold an airworthiness certificate. The certificate was at all times since its issuance subject to suspension by the FAA.[11] Accordingly, this case is no different from Mitchell Arms.[12] The FAA was

---

[10] As the government notes, this provision may be traced back to the Federal Aviation Act of 1958 and the Civil Aeronautics act of 1938, both of which contain similar provisions allowing for suspension of airworthiness certificates. See Pub. L. No. 85-726, § 609, 72 Stat. 731 (1958); Pub. L. No. 75-506, § 609, 52 Stat. 1060 (1938).

[11] That the FAA had not previously exercised its regulatory authority to suspend the airworthiness certificate did not mean that the plaintiff had a constitutionally-protected right to continue using its helicopter for commercial purposes. See Am. Pelagic Fishing, 379 F.3d at 1377; Acceptance Ins., 583 F.3d at 858.

[12] The plaintiff's attempt to argue that the FAA had no valid safety concerns about its helicopter and that the airworthiness certificate's suspension was not in the public interest, but resulted from a mere paperwork violation, is unavailing. This argument disregards the fact that the purpose of documentation supporting an airworthiness certificate is to certify that the aircraft can be safely operated. See 14 C.F.R. §§ 21.183, 21.29. In issuing its suspension order, the FAA stated that allowing an aircraft that was not qualified to hold an airworthiness certificate in the normal category to continue commercial operations would pose an "ongoing and unacceptable risk to aviation safety." Def's Mot. Summ. J. & Dismiss App. 23. This decision was subsequently upheld by the NTSB. Blakely v. Mike's Contracting, LLC, 2007 WL 4116181 (N.T.S.B. Sept. 11, 2007); Sturgell v. Mike's Contracting, LLC, 2008 WL 337874 (N.T.S.B. Feb. 22, 2008). Further, as plaintiff's counsel acknowledged at oral argument, FAA's safety determination is not an issue over which this court has jurisdiction. Moreover, the time for such a challenge has passed. See 49 U.S.C. §§ 44709(f), 46110(a) (2006) (plaintiff may challenge an order within sixty days by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business).

authorized to suspend the airworthiness certificate when necessary to protect the public interest. The plaintiff's interest in the certificate was always conditional and required its compliance with applicable law. The plaintiff thus had no compensable property interest in the airworthiness certificate.

In addition, the plaintiff does not have a compensable property interest in continuing to use its helicopter for commercial purposes. It is not disputed that other uses of the plaintiff's aircraft are available. The fact that the loss of an airworthiness certificate may prevent the most profitable use of the aircraft is unfortunate, but does not make the plaintiff's property interest compensable.[13] See Andrus v. Allard, 444 U.S. 51, 65-66 (1979); Acceptance Ins., 583 F.3d 849, 858. As the Supreme Court explained in Lucas, "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [a property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale)." Lucas, 505 U.S. at 1027-28 (citing Allard, 444 U.S. at 66-67). Here, the plaintiff retains complete control over its helicopter and may do a wide variety of other things with it, except use it in commercial aviation. See 21 C.F.R. § 21.191. These include research and development, showing compliance with regulations, crew training, exhibition, air racing, and market surveys. Id. The plaintiff's ability to use its helicopter for commercial

---

[13] The plaintiff represented at oral argument that prior to suspension of their airworthiness certificates most helicopters of this type were used for crop dusting.

purposes is not itself a compensable property interest that could support a takings claim.[14] For all these reasons, the government is entitled to judgment as a matter of law with regards to the plaintiff's Fifth Amendment takings claim.

### C. The Plaintiff's Tort Claims Must Be Dismissed for Lack of Subject Matter Jurisdiction.

In addition to its takings claim, Counts Two and Three of the plaintiff's complaint allege interference with a business relationship and spoilation of evidence. As the plaintiff recognized in its response to the government's motion for summary judgment and to dismiss, the Court of Federal Claims does not possess jurisdiction over tort claims, including those against the government. See Rick's Mushroom Serv. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."); 28 U.S.C. § 1491(a)(1) (2006) (conferring jurisdiction over claims for damages "not sounding in tort."). Accordingly Counts Two and Three of the plaintiff's complaint are dismissed for lack of subject matter jurisdiction under RCFC 12(b)(1) on the ground that this court lacks jurisdiction over claims sounding in tort.

### III. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment as to Count One of the plaintiff's complaint and its motion to dismiss Counts Two and Three of

---

[14]For this reason, the court declines to proceed to the second step of a takings analysis, namely an analysis of whether government action resulted in a compensable taking of a property interest.

the complaint are **GRANTED**.  Each party shall bear its own costs.  The clerk is directed to enter judgment accordingly.

      **IT IS SO ORDERED**.

                                            **s/Nancy B. Firestone**
                                            NANCY B. FIRESTONE
                                            Judge